UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CALDWELL,

       Plaintiff,

v.                                                              Case No. 1:05-cv-586
                                                                HON. ROBERT HOLMES BELL

DAVE J. BURNETT,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff William Caldwell, an inmate confined at the Bellamy Creek Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Dave Burnett, who is employed by the Michigan Department of Corrections as the Special Activities Coordinator, Correctional Facilities Administration.

Plaintiff's amended complaint alleges that he was interviewed on February 10, 2005, for placement in the Kosher menu program. Plaintiff was interviewed by Chaplain Maguire and Administrative Assistant Bell. Plaintiff alleges that Maguire and Bell conspired to deprive plaintiff of his constitutional rights. Plaintiff alleges that Maguire and Bell refused to consider plaintiff's written answers to the questions, and instead asked plaintiff to respond orally to questions including questions that exceeded the scope of the policy directive. On April 12, 2005, plaintiff received a memorandum from defendant which explained the denial of plaintiff's placement in the kosher meal program. The memorandum stated:

> Caldwell requested accommodation with a Kosher menu. It is noted
> that Caldwell recently "converted" from Al Islam to Judaism and that
> "conversion" was recorded in CMIS as part of this Kosher Menu

accommodation request.  It is further noted that Caldwell changes his faith of choice frequently, having changed five times since he chose to return to lodging in the MDOC about two years ago.  It appears that he was not sincere about staying home and that he is not sincere about sticking with any particular faith. Caldwell was interviewed by Dan Maguire, Chaplain, and Robin Bell, Administrative Assistant. Maguire reports Caldwell seemed to have memorized where proper information for the interview could be found, but does not have "a slight grasp of what it really means."  It is further noted that he recently asked to have his work detail changed so he did not have to work on Sunday, the Sabbath day.  That is an example of his lack of knowledge about things as basic as the Jewish Sabbath.  When asked about dietary requirements, Caldwell seems to know that Kosher food has to be kept separate from non Kosher food and that one cannot mix meat and dairy.  However, this information is so minimal that it would indicate he cannot determine what is acceptable to eat and what is not. His lack of study of his new faith, resulting in his lack of knowledge suggests that he has not been sincere in practicing his faith.  Consequently based on the information available to me and based on his very limited understanding of Judaism and its dietary requirements and based on the indication that Caldwell has not been sincere in his practice of his faith and that he is not sufficiently knowledgeable to be able to keep Kosher, his request for accommodation with the Kosher menu is denied at this time.  He should not be transferred for the purpose of Kosher accommodations.

It is understood that the denial of admission to a special religious menu is not a failure to recognize faith preference.  Declaration of preference, requests to attend religious services, and access to religious materials must be processed according to Department policy.

Plaintiff alleges violations of the Religious Land Use and Institutionalized Persons Act, and the Fourteenth Amendment Equal Protection Clause.  Plaintiff also has asserted a state claim under the Michigan Constitution.  However, plaintiff has filed a motion to voluntary dismiss his state law cause of action.  It is recommended that plaintiff's motion be granted.  Defendant has moved for summary judgment.  Plaintiff has moved to amend his complaint to add a new defendant.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed.

- 2 -

R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant first argues that plaintiff's complaint must be dismissed because plaintiff did not attach a Step III grievance response to his complaint naming defendant.  Defendant submits a rather confusing argument on this issue.  Defendant does not claim that plaintiff never filed a Step III grievance.  Plaintiff did attach a copy of a Step III grievance to his complaint.  Defendant argues that plaintiff did not allege that he failed to receive a Step III response and that the ninety day time period allowed to resolve a grievance, contrary to plaintiff's calculation expired on August 17, 2005.  Defendant points out that plaintiff's complaint was filed on August 21, 2005.  The complaint was

actually filed on August 31, 2005.  Taking defendant's argument as true, it is apparent that plaintiff

must have exhausted his grievance through Step III.  Under defendant's argument, either plaintiff

received a Step III grievance response or he did not and if he did not, the ninety days expired before

plaintiff filed his original complaint in this matter.  Based upon defendant's own argument, there can

be no other conclusion.

Defendant's stronger argument involves the merits of plaintiff's complaint. Prisoners

do not lose their right to freely exercise their religion by virtue of their incarceration.  *Cruz v. Beto*,

405 U.S. 319, 322, n. 2 (1972).  Freedom of religion being a fundamental right, any regulation which

infringes upon it must generally be justified by a "compelling state interest."  *See*, *for example*,

*Wisconsin v. Yoder*, 406 U.S. 205 (1972).  However, as a prisoner, Plaintiff's constitutional rights

are subject to severe restriction.  *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction

on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v.*

*McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24

(1974) (vote).  *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482

U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional

rights is judged is "reasonableness."  *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25.

In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to

assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning

institutional operations."  *Id*. at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119

(1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness

of the regulation at issue."  482 U.S. at 89-91.  First, there must be a "valid, rational connection"

between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id*. at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate."  *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test."  *Id*. at 90.  "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).

> In determining whether a prisoner's particular religious beliefs  are entitled to free exercise protection, the relevant inquiry is not whether, as an objective matter, the belief is "accurate or logical." *Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996).   Instead, the inquiry is "whether the beliefs professed by a [claimant] are sincerely held and whether they are, in his own scheme of things, religious." *Patrick [v. LeFevre]*, 745 F.2d at 157 (quoting *United States v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed.2d 733 (1965)) (alteration in original) (emphasis added).   A claimant need not be a member of a particular organized religious denomination to show sincerity of belief.  *See Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 103 L. Ed.2d 914 (1989).

*Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).

In *Jackson v. Mann*, the Second Circuit held that the district court erred in substituting the objective "accuracy" of the plaintiff's assertion that he was Jewish for the correct test  – whether the plaintiff's beliefs were sincerely held.  196 F.3d at 320.  The pertinent issue in *Jackson*, as in this case, was whether the plaintiff was entitled to receive a kosher diet.  *Id*. at 318.  The Second Circuit

concluded that the defendants in *Jackson v. Mann* were not entitled to summary judgment because even if the plaintiff was not Jewish according to Judaic law, this did not resolve the continuing issue of material fact regarding the sincerity of the plaintiff's religious beliefs.  *Id*. at 320-21.

Similarly, in *Mosier v. Maynard*, 937 F.2d 1521 (10th Cir. 1991), the Tenth Circuit held that merely because the plaintiff was not a member of the Cherokee nation or the Native American worship group at his prison, it did not mean that his belief was insincere.  *Id*. at 1523.[1] As noted by the Tenth Circuit in *Mosier*[2], the United States Supreme Court has rejected the idea that membership in a religious organization is a prerequisite for religious convictions to be judged sincere.  *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834, 109 S.Ct. 1514, 1517-18 (1989).

As noted above, the correct test for determining whether a prisoner is entitled to a Kosher diet is whether his beliefs are sincerely held.  *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999).  Sincerity of a religious belief is generally a question of fact.  *United States v. Seegar*, 380 U.S. 163, 185.  Whether a belief is sincere tests whether it is "truly held and religious in nature." *Martinelli v. Dugger*, 817 F.2d 1499, 1504 (11th Cir. 1987).  "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation."  *Mosier*, 937 F.2d at 1526.  What exactly is required to test the sincerity of a religious belief is not entirely clear.  It appears that sincerity must be based on a totality of the factual

---

[1]The plaintiff in *Mosier* was seeking an exemption from the prison's requirement that hair be kept to a certain length.

[2]*See Mosier*, 937 F.2d at 1523.

circumstances.  Knowledge of the practices of a particular faith may be a factor in determining

sincerity, but it cannot be an exclusive test of the sincerity of an individual's religious belief.[3]

Furthermore, Plaintiff claims that Defendant's conduct violated his rights under the

Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1.  Section

2000cc-1 of the RLUIPA states:

> (a)    General Rule
>
> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>
>> (1)    is in furtherance of a compelling governmental interest; and
>>
>> (2)    is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a

program or activity that receives Federal financial assistance," or where the burden affects

"commerce with foreign nations, among the several States, or with Indian tribes."  42 U.S.C. §

2000cc-1(b).  Clearly, if plaintiff has a sincere religious belief then failing to provide him a Kosher

diet could qualify as a substantial burden on plaintiff's right to practice his religion.

In this case, under a totality of the circumstances approach, defendant has articulated

valid reasons which could justify the refusal to provide plaintiff a Kosher diet.  Normally, in the

opinion of the undersigned, it is difficult for a defendant to establish that a plaintiff's religious belief

is not sincerely held.  Plaintiff was a very recent convert to Judaism.  Although plaintiff memorized

---

[3] As stated in *Mosier*, 937 F.2d at 1523, "while practice or nonpractice of a particular tenant of a religion may be relevant to sincerity, it is not conclusive."

the correct answers to questions, plaintiff did not exhibit an understanding of the need for a Kosher diet. Prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners needs. The Kosher menu program is costly and not available at every prison in the State. Some prisoners may attempt to use the program to obtain a transfer to a different prison or to set up a particular prison employee as a potential defendant in a lawsuit. Defendant has the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to the Kosher program. It is recognized that this is a very difficult task to undertake. However, a lack of the basic knowledge regarding Judaism and the basic knowledge of why food must be Kosher and what foods are Kosher is a strong indication of a lack of sincerity. Under the circumstances of this case, it is the opinion of the undersigned, that defendant correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available to him. In the opinion of the undersigned, defendant is entitled to summary judgment on plaintiff's First Amendment and Eighth Amendment claims.

Similarly, plaintiff's equal protection claim is unfounded. Plaintiff alleges that defendant's decision to deny Kosher meals was due to race based religious discrimination. To establish a violation of the Equal Protection Clause, a prison inmate must prove that a discriminatory intent or purpose against a disfavored class or excluded group was a factor in an action taken by prison officials. *See McCleskey v. Kemp*, 481 U.S. 279 (1987); *Heckler v. Mathews*, 465 U.S. 728 (1984); *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252, 265 (1977). It is insufficient to allege discriminatory intent or purpose without pleading with some degree of specificity the supporting material facts. For example, in *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988), the plaintiff alleged that she was discharged from

- 8 -

her employment due to age discrimination.  However, her allegations were unsupported by the underlying material facts.  Similarly, plaintiff has failed to present any underlying facts which could support an equal protection violation.  In the opinion of the undersigned, defendant is entitled to summary judgment on this claim.

Alternatively, defendant moves for qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits.  *Dietrich*, 167 F.3d at 1012.  An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the

proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level

of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in the light of the pre-existing law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert.*

*denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been
> authoritatively decided by the United States Supreme Court, the Court
> of Appeals, or the highest court of the state in which the alleged
> constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was

previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing

violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order

to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect

a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and

a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendant's conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Plaintiff has failed to show that defendant violated any clearly established law. In the opinion of the undersigned, it is recommended that defendant be granted qualified immunity in this matter.

Plaintiff has also moved to file a second amended complaint. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). Plaintiff seeks amendment solely to add Dan Maguire as a

defendant in this matter.  In the opinion of the undersigned, plaintiff's amendment is futile, because defendant articulated valid reasons to deny plaintiff Kosher meals at the time plaintiff made the request.  Including Dan Maguire as an additional defendant  will not provide plaintiff with a more favorable outcome.  Under the circumstances in this case, the decision to deny Kosher meals to plaintiff was a rational and reasonable decision at the time it was made.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to defendant's motion for summary judgment.  Accordingly, it is recommended that plaintiff's motion to dismiss the state law claim (Docket #41) be granted, defendant's motion for summary judgment (Docket #32) be granted, and this case be dismissed in its entirety.  It is further recommended that plaintiff's motion to amend complaint (Docket #44) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendant's motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140

(1985).


           /s/ Timothy P. Greeley

TIMOTHY P. GREELEY

UNITED STATES MAGISTRATE JUDGE


Dated:   July 28, 2006